UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CATHERINE PUETZ, M.D.,

    Plaintiff,

v.                                                                                          Case No. 1:14-CV-275

SPECTRUM HEALTH HOSPITALS,                              HON. GORDON J. QUIST
KEVIN SPLAINE, and
JEANNE ROODE,

    Defendants.
_____/

**OPINION REGARDING
SUBJECT MATTER JURISDICTION**

On April 24, 2015, the Court issued an Order to Show Cause Regarding Jurisdiction, which directed the parties to address two jurisdictional issues, namely, why Plaintiff's claim for declaratory relief set forth in Count Four of her complaint alleges a case of actual controversy as required for Article III jurisdiction under the Declaratory Judgment Act and why Count Four, which requests a declaration that the "copyright on any and all Observation Unit materials belongs to her and she is the lawful owner [of such materials]," (dkt. # 1 at Page ID# 25, ¶ 112), presents a federal claim that arises under the Copyright Act. Pursuant to the April 24, 2015 Order, Plaintiff and Defendants have filed responses addressing the specified issues. Having considered the parties' responses, for the following reasons, the Court concludes that it lacks subject matter jurisdiction over this case because Plaintiff's request for a declaratory judgment of ownership of copyrighted materials does not invoke federal question jurisdiction under the Copyright Act. Therefore, Plaintiff's complaint will be dismissed without prejudice.

**I. BACKGROUND**

Plaintiff is a doctor board certified by the American Board of Internal Medicine and the American Board of Emergency Medicine. (*Id.* at Page ID #3, ¶ 7.) Between 1999 and 2013,

Plaintiff had admission privileges in emergency services and observation medicine at Defendant Spectrum Health Hospitals (SHH) through her employment with Emergency Care Specialists, an independent contractor that provides emergency services for certain SHH facilities. (*Id.* at Page ID##3–4, ¶¶ 8–9.) During her years at SHH, Plaintiff held various medical positions, including Associate Medical Director of Observation Medicine, Associate Medical Director of ED/Cardiovascular Services, Clinical Advisor of Emergency Medical Observation, and Clinical Advisor in Pediatrics. (*Id.* at Page ID#4, ¶ 10.)

Plaintiff alleges that, independent of her duties and services that she provided to SHH, she developed various materials in observational medicine for use in evaluating patients for transfer to in-patient, observation, or discharge, and developed treatment protocols and order sets relating to treatment of children in an observational unit. Plaintiff alleges that she developed such materials on her own personal time, without use of SHH's facilities or resources. (*Id.* at Page ID##4–5, ¶¶ 11, 13.) Plaintiff claims that, for financial reasons, SHH officials had historically rejected the concept of observational medicine and did not endorse it, but SHH eventually viewed Plaintiff as a competitor and took a series of steps designed to restrict her ability to compete, including the insertion of an intellectual property clause in her Clinical Advisor contract and attempts to take control of her materials and license them in SHH's name. (*Id.* at Page ID##7–8, ¶¶ 23–25.) Plaintiff alleges that once SHH discovered the demand for Plaintiff's literature and materials on observational medicine by other hospitals, SHH reversed course and sought to distribute Plaintiff's materials as its own. After obtaining a copy of Plaintiff's pamphlet, SHH asserted that it had total control over the concept of observation units and associated materials, and insisted that it could prohibit Plaintiff from consulting with other hospitals on the topic of observation units. (*Id.* at Page ID##8–9, ¶¶ 30–34.)

On August 5, 2013, Plaintiff signed onto Facebook and saw a picture of a female's backside, posted by a nurse. Plaintiff suspected that the picture was of a woman whom Plaintiff had seen in

2

public and who had been treated on occasion in SHH's emergency department. Plaintiff wrote in the comment area, "OMG. Is that TB?" (*Id.* at Page ID#10, ¶¶ 38–39.) After the nurse's posting was reported, SHH conducted an investigation. Some of the employees involved were fired, but others were not. Although Plaintiff was initially disciplined, SHH ultimately banned her from all of its facilities. Plaintiff alleges that, although SHH claims it banned her from its hospitals solely because of the Facebook incident, it "exaggerated the effect of Plaintiff's mistake and inflated the discipline to justify the termination of her appointments and to gain greater control over her Intellectual Property." (*Id.* at Page ID#15, ¶ 61.)

On March 14, 2014, Plaintiff filed a six-count complaint against Defendants SHH, Kevin Splaine, and Jeanne Roode, alleging claims of defamation, false light invasion of privacy, breach of contract and the covenant of good faith and fair dealing, declaratory judgment-intellectual property ownership, and tortious interference with business expectancy (two counts). For purposes of subject matter jurisdiction, Plaintiff alleged that the Court has jurisdiction over the case because Plaintiff's claims arise under the Copyright Act, 17 U.S.C. § 101 *et seq.* (*Id.* at Page ID#3, ¶ 5.) Although Plaintiff alleged that her claims arise under the Copyright Act, in truth, the only claim that could even arguably arise under the Copyright Act is her claim in Count Four seeking "a declaratory judgment that she is the owner of the copyrighted materials," because all of Plaintiff's other claims arise under state law.

## II. DISCUSSION

"[F]ederal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1137 (6th Cir. 1991); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563, 1570 (1999) ("[S]ubject-matter [jurisdiction] delineations must be policed by the courts on their own initiative."). Accordingly, this Court may only adjudicate claims "that (1) are within the judicial power of the United States, as defined in the

3

Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012) (internal quotation marks omitted).  The party asserting federal jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  Subject-matter jurisdiction must exist at the time the complaint was filed. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

Pursuant to 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights . . . ."  "However, it is well-established that not every complaint that refers to the Copyright Act arises under that law for purposes of § 1338(a)." *Perry v. Broadcast Music Inc.*, 23 F. App'x 210, 211 (6th Cir. 2001) (internal quotation marks omitted).  To determine whether subject-matter jurisdiction exists under the Copyright Act, federal courts often apply the Second Circuit's test articulated in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964).  Under the *T.B. Harms* test, an action "arises under" the Copyright Act

> if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction, or asserts a claim requiring construction of the Act, . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*Id.* at 828 (internal citation omitted).  The *T.B. Harms* court explained that not all things copyright are included within the jurisdiction of federal courts.  "Just as with western land titles, the federal grant of . . . a copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." *Id.* at 826.  Based on this observation, the court concluded that the dispute at issue was solely one of ownership of the copyright and did not present any significant questions under the Copyright Act.  The plaintiff's claim for a declaration regarding ownership of copyrights was thus not within the federal court's jurisdiction. *Id.* at 826–27.

4

The Ninth Circuit has described the test set forth in *T.B. Harms* as "essentially a reiteration of the 'well-pleaded complaint' rule." *Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 986 (9th Cir. 2003). Under that rule, a complaint that alleges solely state law claims is not within a federal court's original jurisdiction, even if the complaint asserts that federal law deprives the defendant of a defense he may raise or that a federal defense the defendant may raise does not defeat the plaintiff's claim. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846–47 (1983).

Because Count Four is framed as a request for declaratory relief under the Declaratory Judgment Act based on federal question jurisdiction, the parties' positions are reversed, and the Court must consider the issue of jurisdiction from the perspective of the defendant's hypothetical claim.[1] *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, __ U.S. __, 134 S. Ct. 843, 848 (2014) ("[F]ederal courts, when determining declaratory judgment jurisdiction, often look to the character of the threatened action." (internal quotation marks omitted)). Thus, the proper inquiry is "if the declaratory judgment defendant brought a coercive action to enforce its rights, [would] that suit necessarily present a federal question[?]" *Franchise Tax Bd.* 463 U.S. at 19, 103 S. Ct. at 2851. In other words, this Court must look to the face of Plaintiff's well-pleaded complaint to determine whether any coercive action that SHH might have brought to enforce its rights would necessarily present a federal question. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 329 (5th Cir. 2008); *see also GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) ("In declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant.").

---

[1] Because the Declaratory Judgment Act does not provide an independent basis for federal subject matter jurisdiction, the court must have an independent basis for jurisdiction, such as diversity of citizenship or a federal question. *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).

5

In *Severe Records, LLC v. Rich*, 658 F.3d 571 (6th Cir. 2011), the plaintiffs filed a complaint that included a claim for copyright infringement and a claim for a declaratory judgment seeking a declaration identifying the authors of certain sound recordings and the underlying composition for the musical works and declaring that one of the defendants was not an author of one of the compositions. The plaintiffs alleged that, prior to the lawsuit, the defendants sent cease and desist letters that accused the plaintiffs of copyright infringement. In response, the plaintiffs asserted that they were entitled to exploit the songs for commercial use as co-owners because one of the plaintiffs was a co-author. The Sixth Circuit held that the plaintiffs failed to state a claim for copyright infringement, but concluded that the district court erred in concluding that it lacked jurisdiction over the plaintiffs' declaratory judgment claim, which the court characterized as a response "to the numerous cease-and-desist letters that Plaintiffs received from Defendants." *Id.* at 580. The court stated the test for determining jurisdiction as follows:

> [I]n the context of a declaratory judgment action, the normal position of the parties is reversed; therefore, we do not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question. Instead, this court must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law. Our inquiry is thus whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant. Federal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.

*Id.* at 580–81 (internal quotation marks and citations omitted). The court distilled the inquiry into two questions: (1) whether the defendants could have sued the plaintiffs for copyright infringement under the theory that they were not the authors or owners of the works in question; and (2) whether such an action would have arisen under federal law. *Id.* at 581. The court described the answer to the first question as "easy," because the defendants had threatened to sue the plaintiffs for copyright infringement on numerous occasions. *Id.* The court found the answer to the second question more difficult, but nonetheless concluded that such a claim would have arisen under federal law. The

6

court acknowledged that a claim concerning copyright ownership based on state-law principles, such as contract, does not "arise under" the Copyright Act merely because it involves a copyrighted work. *Id.* (quoting *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 81 (1st Cir. 2007)).  However, it noted that "a question of authorship, rather than ownership, does arise under the Copyright Act," and concluded that the plaintiffs' request for declaratory relief "undeniably" sought a declaration of authorship of the sound recordings and musical compositions based on the defendants' numerous cease-and-desist letters attached to the amended complaint, which suggested a dispute over authorship.  *Id.* at 581–82.

Turning to the first of the two questions the Sixth Circuit posed in *Severe Records, LLC*—whether SHH could have asserted a claim against Plaintiff for copyright infringement under the theory that Plaintiff was not an author or owner of the alleged copyrighted material—the answer is no.  Unlike the plaintiff in *Severe Records, LLC*, in the instant case, Plaintiff does not allege that SHH ever sent her a cease-and-desist letter or otherwise threatened to sue her for copyright infringement.  Instead, Plaintiff alleges that SHH took a number of steps designed to restrict her ability to compete, including imposing an intellectual property clause in her Clinical Advisor contract, trying to take control of her materials and license them in its own name, opposing her development of a consulting business, and harshly punishing her for the Facebook incident.  (Dkt. # 1 at Page ID##7–8, ¶ 25; *see also id.* at Page ID#27, ¶ 126 ("After learning of third parties [sic] inquiries about Plaintiff's copyrighted materials, Spectrum took a stronger interest in her Observation Unit and materials.  It initiated discussions of distribution and marketing of Observation Medicine protocols and tried to control the materials that Plaintiff had created that were part of her intellectual property.").  None of this relates to copyright infringement.  Instead, Plaintiff's allegations show that, to the extent a dispute existed, it concerned ownership and control of the observation medicine materials that Plaintiff created—whether the materials that Plaintiff created were subject to the intellectual property clause in Plaintiff's Clinical Advisor agreement.  (*Id.* at

7

Page ID#27, ¶ 123.) Regardless, Plaintiff has not alleged any facts showing that SHH had any basis for a coercive claim against Plaintiff based on the alleged ownership dispute.[2]

Even assuming that the Court could answer the first question in the affirmative, it would have to answer the second question in the negative—any possible coercive claim that SHH might have would not arise under federal law because the dispute boils down to ownership on the basis of contract. In contrast to *Severe Records, LLC*, Plaintiff's allegations do not reveal a dispute concerning authorship. Plaintiff alleges that she, alone, authored the materials at issue. Plaintiff does not allege that SHH authored, or claimed to have authored, the materials. In fact, Plaintiff's request for declaratory relief does not request a declaration pertaining to authorship, but instead is limited solely to a declaration that "she is the owner of the copyrighted materials." (*Id.* at Page ID#29, ¶ 136.)

Accordingly, this Court lacks subject matter jurisdiction because Plaintiff's declaratory judgment claim does not arise under the Copyright Act.[3]

An Order consistent with this Opinion will enter.

Dated: June 26, 2015                       /s/ Gordon J. Quist
                                      GORDON J. QUIST
                                      UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff's response to the Court's Order to Show Cause Regarding Jurisdiction likewise shows that SHH did not have a coercive claim. Plaintiff admits that "Spectrum has not commenced suit or explicitly threatened enforcement actions." (Dkt. # 77 at Page ID#3840.) Plaintiff states that "Spectrum has required its personnel to impose the Spectrum copyright on Plaintiff's Observation Materials . . . [which] demonstrates an affirmative act of seizing the materials and publicly making a claim for the copyright," (*id.* at Page ID##3840–41), yet, such activity does not provide a claim to SHH.

[3] Plaintiff's assertion that a dispute whether a work was made for hire gives rise to a federal question under the Copyright Act cannot support the exercise of jurisdiction in this case. While the statement is no doubt an accurate statement of the law, *see JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (6th Cir. 9th Cir. 2010), the work-for-hire doctrine would be a defense that SHH would raise that would not provide SHH a coercive claim against Plaintiff. Moreover, Plaintiff does not allege that SHH ever asserted the work-for-hire doctrine as a basis for its ownership.